UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA          CASE NO. 18-cr-00047-01

VERSUS                            JUDGE FOOTE

MARIE KEMP (01)                   MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

Marie Kemp ("Defendant") was charged by indictment with two counts of making a false statement on tax returns. Before the court is Defendant's Motion to Suppress (Doc. 18), in which she seeks to suppress statements and obtained during a civil audit. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion, and the following facts were established. The IRS' Lead Development Center ("LDC") identified Marie's Tax Service (owned by Defendant) as a possible abusive tax preparer and initiated an investigation. Tr. 12. The LDC transferred the case file to Special Agent Rampey in the *civil* division of the IRS. Id. The original purpose of the investigation was to determine whether Defendant had placed false entries on her clients' tax returns. Tr. 10.

In accordance with common practice, Agent Rampey examined Defendant's personal tax returns as part of the investigation. Tr. 16-17. He noticed that, although Defendant was preparing about 3,000 tax returns per year, she only reported about $40,000

in total income. Tr. 17. Agent Rampey said that he would have expected her to net $100 per return, so her total taxable income should have been close to $300,000.

On January 13, 2014, Agent Rampey sent a letter to Defendant notifying her that her personal tax return was going to be audited. Defendant called Agent Rampey, and he explained that he wanted to meet with her to discuss the civil audit and give her an opportunity to discuss any discrepancies. Tr. 20. The letter included a list of documents Rampey would need to review. Agent Rampey also drove by Defendant's house in order to get an understanding of her style of living. He estimated that her house was worth $800,000. Tr. 21.

On January 17, 2014, Agent Rampey sent Defendant another letter advising her that she was under a civil investigation for the tax returns that she had been preparing for clients. Agent Rampey explained that, at this time, she was under both the civil investigation as a tax preparer and an audit for her personal returns. Tr. 24.

Agent Rampey conducted his initial interview of Defendant on February 19, 2014. The purpose of the interview was to get information for the investigation of the returns she prepared for others and to get information about the audit of her personal income tax. Tr. 86. He asked Defendant to explain the discrepancies he had found. He described her answers as "very evasive." Defendant only produced about three-fourths of the documents Rampey requested in his January 13 letter. Tr. 23. On February 24, 2014, Agent Rampey sent Defendant a second document request asking for the missing items. Tr. 27. Defendant called Agent Rampey on March 11, 2014 to request more time to gather the documents.

He did not speak to her again after that date, and he did not receive any more documents from her. Tr. 28.

On March 13, 2019, Agent Rampey received a phone call from Donald Melancon, who claimed to be Defendant's attorney. Agent Rampey told Melancon that, in order to represent Defendant, Melancon would need to fill out a Form 2848 (Power of Attorney or "POA"). Melancon faxed the form while the two men were on the phone, but it was not complete. Agent Rampey told Melancon how to fix the form. A week later, Agent Rampey called Melancon to request the corrected form and to ask about the records he never received from Defendant, but he did not hear back from Melancon until a month later. During that month, Agent Rampey began preparing summonses for the missing records. Tr. 28-29.

On May 14, 2014, Agent Rampey prepared a Form 11661, which engages a Fraud Technical Advisor (FTA). The FTA is an expert on fraud who provides guidance to the agent. The purpose of the form is to identify potential fraud indicators and create a plan of action for moving forward with the case. Tr. 32.

On July 7, 2014, Agent Rampey conducted an interview of Belinda Evans, one of Defendant's tax clients. Evans informed Agent Rampey that Defendant had been arrested in Louisiana for state tax fraud. Tr. 43. Agent Rampey scheduled another interview with Defendant for July 8, 2014 and sent her notice and a summons to appear at the interview. Defendant did not attend the interview; instead, Melancon notified Agent Rampey that Defendant would not attend the interview due to the ongoing state criminal investigation. Tr. 41-42. According to Agent Rampey, it was at this point that he knew that Defendant

was not going to cooperate with the civil audit, and he decided to prepare a referral to the criminal division.  Tr. 43-44.

On July 9, 2014, Agent Rampey received a call from Melancon, from whom Rampey had still not received a proper POA form.  Melancon asked whether Agent Rampey knew of any criminal IRS investigation against Defendant.  Agent Rampey responded that he was an employee of the civil division and had no knowledge of any criminal investigation against Defendant within the IRS.  The two discussed the state criminal charges against Defendant.  Tr. 48.

On July 11, 2014, Agent Rampey began filling out a Form 2797, which referred the case to the criminal division.  The form was signed by Rampey, the FTA, and the FTA supervisor.  The form laid out the facts of Agent Rampey's investigation and included exhibits to support his findings.  Tr. 45-47.  He submitted the form on July 13, 2014.  Tr. 46.

On July 25, 2014, after Agent Rampey submitted the referral but before he received a response from the criminal division, he received a faxed letter from Melancon.  The letter stated that Melancon was confirming the July 9 conversation.  Tr. 47-48.  In a file memorandum, Rampey noted that he believed that Melancon was trying to set up a "Tweel issue" with this letter.  Tr. 99.  This was the last time Agent Rampey had any contact with Melancon. Tr. 51.  Agent Rampey testified that he never lied to Melancon, but he was unable to give Melancon complete information due to the lack of a proper POA form.  Tr. 97, 102

On July 29, 2014, Agent Rampey received an e-mail from Special Agent (SA) Darrin Heusel, who was assigned to the case in the criminal division. On July 30, 2014, SA Heusel and Agent Rampey held a conference to discuss the merits of the referral and decide whether the criminal division would continue with the case. Tr. 50. On February 27, 2015, Agent Rampey received an email from the FTA advising that the criminal investigation of Ms. Kemp had been approved. Tr. 53. The email requested that Agent Rampey be the Cooperating Agent, which is an employee of the civil division who has knowledge of the complex aspects of the tax code and can provide technical assistance to the Special Agent. Tr. 46.

**Applicable Law**

In United States v. Tweel, 550 F.2d 297 (5th Cir. 1977), the Fifth Circuit held that the failure of an IRS revenue agent, acting at the request of the organized crime and racketeering section of the Justice Department, to apprise the defendant of the obvious criminal nature of the investigation constituted a deliberate deception by the agent, violating the defendant's rights under the Fourth Amendment. However, the Court held that "the mere failure. . . to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do[es] not constitute fraud, deceit, and trickery." Id. at 299.

In subsequent cases, the Fifth Circuit has held that a government official may not make "material misrepresentations" about the nature of an investigation or inquiry, but the burden is on the subject of the investigation to prove that such misrepresentations are made. United States v. Caldwell, 80 F.2d 1395,1400 (5th Cir. 1987) (affirming the denial of a

motion to suppress in a tax case where evidence indicated that the civil audit was not requested as part of a clandestine criminal investigation); United States v. Powell, 835 F.2d 1095, 1099 (5th Cir. 1988) (affirming the denial of a motion to suppress in a tax case where the civil audit was not initiated with criminal overtones but instead "grew" into a criminal investigation). The agent does not have the affirmative duty to inform the taxpayer that the agent's investigations might result in criminal charges. United States v. Blocker, 104 F.3d 720, 729 (5th Cir. 1997).

**Analysis**

Defendant argues that the procedure of the IRS allows the agency to develop proof of fraud under the guise of a civil investigation, then use the evidence developed in the civil investigation to support a criminal conviction. She asserts that such civil investigations, including this one conducted by Agent Rampey, are used as a "stalking horse" for the criminal side of the IRS, and as such are deceitful measures to procure documents and statements from defendants.

Defendant points to circumstances that she believes indicate that the audit was for criminal purposes. Such circumstances include Rampey immediately investigating her personal taxes after the LDC referred the preparer investigation, Rampey noticing potential large discrepancies between her actual and claimed income, Rampey driving by her house, the involvement of an FTA in the audit, and Rampey failing to tell Melancon that he was investigating Defendant personally. Defendant contends that the circumstances show that, from the very beginning, Rampey "conducted a criminal case gathering of information in civil 'clothing.'"

Defendant also points to the Examining Officer's Activity Record (Ex. A) kept by Rampey, which Rampey stated is for an income tax audit of a Form 1040. Defendant contends that Rampey somehow "admit[ted] that Exhibit A was his activity log on the criminal case he worked up against Mrs. Kemp." Defendant identifies no facts that support this accusation. Defendant also alleges that Rampey "admit[ted] that the entire P-7 investigation was for penalty (or criminal purposes)." This conclusory allegation is not supported by Rampey's testimony, in which he repeatedly stated that the audit was only for civil purposes.

Defendant was never intentionally misled regarding the existence of a criminal investigation so as to obtain her consensual disclosure of information. Agent Rampey did consult with an FTA, but only after identifying multiple discrepancies, including underreported income, in Defendant's tax returns. Defendant has not provided a basis to support a Tweel violation because she did not show that any IRS employee attempted to deceive her during the civil audit.

The only time Rampey was asked about a possible criminal investigation was by Melancon, but Rampey could not share any information because the POA form was never properly filled out. However, Rampey did tell Melancon that he was not aware of one, which was true as of that moment.

Defendant does not offer any evidence that this was a "criminal case in civil clothing" other than her conclusory allegations. As the cited cases show, Rampey did not have an affirmative duty to tell Defendant that criminal charges might result. Also, at the time he got any information/documents from Defendant voluntarily, it was at the interview

on February 19, 2014. Rampey never heard from her after March 11, 2014, and he did not refer Defendant's matter to the criminal division until July 25, 2014.

Accordingly;

It is recommended that Defendant's Motion to Suppress (Doc. 18) be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of June, 2019.



Mark L. Hornsby
U.S. Magistrate Judge